# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**BRANDY WINFORD**                                                          **PLAINTIFF**


**VS.**                          **No. 3:25-cv-00146 BSM/PSH**


**COMMISIONER,**
      **Social Security Administration**                          **DEFENDANT**


## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Brian S. Miller.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.


### DISPOSITION

Plaintiff Brandy Winford ("Winford") appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") to deny her

claim for Disability Insurance Benefits ("DIB"). Winford alleges she has been disabled since January 10, 2021. She contends the Administrative Law Judge ("ALJ") erred in two ways, by (1) failing to consider medical evidence the Appeals Council stated was material; and (2) finding, without substantial evidence, that her symptoms and debilitating pain were not supported by the medical evidence. Winford also claims that the Appeals Council's decision not to consider the opinion of Dr. Reggie Cullom ("Cullom") was an abuse of discretion. The parties ably summarized the medical records and the testimony given at the administrative hearings conducted on November 14, 2022, and June 17, 2024. (Tr. 71-95, 43-70). The Court has carefully reviewed the record to determine whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from January 10, 2021, through July 15, 2024. Substantial evidence supports the Commissioner's decision, and it is recommended that the complaint be dismissed.

*First Administrative Hearing:* The initial evidentiary hearing, on November 14, 2022, was conducted telephonically due to COVID considerations. Responding to the ALJ, Winford stated she was 47 years old with a high school education, and was 5'4", 235 pounds. She possessed a driver's license and drove "short distances." (Tr. 76).

Reviewing her work history, Winford described clerical work for Legacy Hospice in 2007 and, later, bookkeeping for her husband's farm. In 2013, Winford stated she was an accounting clerk at Carlock Ford, and from 2016-2020 was self-employed, owning and operating a convenience store. This job involved working at the store, hiring, training, and terminating employees, and monitoring payroll and inventory. Winford stated she left this job because "my pain just kept getting progressively worse and I couldn't do the job anymore." (Tr. 79).

Winford cited knee, lower back, and hip arthritis issues which interfered with her ability to stand and walk at work. She was also treated for asthma. At the time of the hearing, Winford was taking prescription medication for high blood pressure and was using an inhaler as needed. She was not taking prescription pain medication. The blood pressure medicine was effective, with no side effects.

Winford lived with her husband, a farmer, and was able to tend to personal duties such as showering and dressing. Around the house, Winford helped with meals, washed the dishes and clothes but did not carry the laundry basket, sweep, or mop. She was able to "do small excursions" to the store if shopping was necessary. (Tr. 81). Socially, Winford visited her daughter's house but did not take part in any church, club, or group activities outside her home.

Winford's attorney inquired more about her medical issues. Winford

3

described a severe automobile accident in 1999 that crushed her upper legs and required rods and screws to stabilize those injuries.  Two years of physical therapy followed the accident.  Winford noted her previous accounting job required her to walk and stand for two hours and sit for eight hours in the workday.  She could not do that job now because "the pain won't allow me to stay in any position for over a few minutes at a time."  (Tr. 83).  "I just can't stay in any position long enough to – I can't sit anywhere for any amount of time.  I can't stand for any amount of time."  (Tr. 89).  This pain is in her knees, hips, and lower back.  Also, Winford said the pain prevented her from performing her past work at the convenience store.  Winford identified her pain, being overweight, and asthma as her primary medical problems.

Cullom, her treating physician, provided steroid injections in her hips, knees, and back to address the pain.  Cullom also referred Winford for twelve physical therapy sessions -- she stated the sessions did not provide significant pain relief.  The physical therapy sessions were a prerequisite of Cullom for Winford to have a lumbar spine MRI.  The MRI, from March 2022, revealed a moderate disc bulge at L2-L3, a small disc bulge with severe facet arthritis and a six-millimeter cyst at L3-L4, a moderate disc bulge at L5-S1, and severe spinal cord narrowing.  In May 2022, Winford saw a neurologist who diagnosed her with lumbar spondylosis and

4

chronic leg pain stemming from the automobile accident in 1999. According to Winford, the neurologist indicated surgery would not be beneficial and referred her to pain management. The pain regimen, administered from May to August 2022, included muscle injections, steroid injections, a nerve block in her spinal column, and an ablation. Winford did not find these treatments helpful.

Winford explained her earlier testimony that she took no pain medication. She stated that some family members had a history of pain medication addiction. As a result, she had never taken prescription pain medication and "I'm just not going to take it." (Tr. 88).

In summary, Winford stated she could take a "few steps around the yard" but the pain in her hips and knees caused her to stop. She stated the pain was when she was standing, sitting, walking, "all the time," and affected her ability to concentrate. (Tr. 89).

Rosalind Lloyd ("Lloyd"), a vocational expert, described Winford's past relevant work. The ALJ asked Lloyd to assume a worker of Winford's age, education, and experience, who could perform sedentary work which did not require the following: climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; operation of lower extremity foot control; exposure to fumes, odors, or gases; and exposure to unprotected heights. Lloyd testified that

such a worker could perform Winford's past job of accounting clerk.  In addition, Lloyd stated this hypothetical worker could perform other jobs, including the jobs of charge account clerk, callout operator, and document preparer.  The ALJ, in a second hypothetical question posed to Lloyd, added the restriction that the worker would be unable sit, stand, or walk or perform their work as much two hours a day. Lloyd indicated no jobs were available for such a worker.  If the variable of four absences a month were added, Lloyd stated there would be no jobs available for this worker.  (Tr. 90-92).

In response to a final question from her attorney, Winford confirmed that she was still receiving pain management care but not seeing any other specialists.  (Tr. 93).

*The ALJ's First Decision:*  In his December 2022, opinion the ALJ determined the relevant period under consideration was from the alleged onset date of January 10, 2021, through the date of his opinion.  The ALJ found Winford had the following severe impairments: bilateral knee degenerative joint disease; obesity; hypertension; asthma; lumbago; and hip osteoarthritis.  The ALJ found Winford did not meet any Listing, specifically discussing Listings 1.15, 1.18, and 3.03.  The ALJ assessed Winford with the residual functional capacity ("RFC") to perform sedentary work with the restrictions which mirrored the first hypothetical

6

question posed to Lloyd.  Citing and discussing the relevant factors for assessing credibility, the ALJ determined that Winford's statements were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 118). The ALJ addressed the medical evidence of record, including the opinions of the state agency medical consultants and the findings of Cullom and Dr. Shakeb Hashimi ("Hashimi").

The ALJ concluded that Winford was capable of performing her past relevant work as an accounting clerk.  Consequently, the ALJ found she was not disabled. (Tr. 113-122).

*Appeals Council's Remand:*  On September 19, 2023, the Appeals Council granted Winford's request for review, remanding with the following directions for the ALJ:  make certain that material evidence was entered into the records, specifically citing medical records from October 25, 2022, from November 23, 2021 to April 11, 2022, May 9, 2022, and from May 25 to July 26, 2022; ensure all exhibits are selected, arranged, and marked; further consider Winford's maximum RFC and provide appropriate rationale with specific references to evidence in support of the assessed limitations; further consider whether Winford has past relevant work and, if so, can perform it and, if needed, obtain vocational expert testimony on this issue; and, if warranted, receive supplemental vocational

testimony to clarify the effect of the assessed limitations on Winford's occupational base. (Tr. 129-130).

*Second Administrative Hearing:* At the second administrative telephonic hearing, on June 17, 2024, Winford's attorney confirmed that the records cited by the Appeals Council had been submitted, along with records from Cullom and Northeast Arkansas Baptist Orthopedics.

Winford again testified, confirming her educational level, stating she was 5'2" and weighed 160 and was still driving. Responding to questions from the ALJ, Winford clarified that her past relevant work consisted of accounting-type duties for a car dealer from 1999 to 2016 and owning and operating a convenience store from 2016 to 2020. She opined that she could not perform the accounting job because "I just don't think I could sit for an eight-hour period of time." (Tr. 65).

Winford reiterated her inability to stay in one position without experiencing pain. She was no longer using an inhaler and was not taking prescription pain medication. She had no side effects from the prescription medicine she was taking.

Winford's living situation had not changed. She was living with her husband, who farmed, and stated she could shower without assistance, cook, do laundry and other light chores, but did not sweep or mop. She and her husband shared duties on paying the bills, and Winford helped with shopping requirements.

Winford's attorney then inquired about her 1999 automobile accident and the rods and screws implanted to address her leg injuries. Winford stated that her weight loss (98 pounds since the November 2022 hearing) has "not made any difference" in the pain in her knees and hips. (Tr. 57). As in the initial hearing, Winford and her attorney reviewed the MRI results from April 2022. Winford indicated that she had seen Cullom after the earlier hearing, in May 2023 and April 2024. In all, Winford agreed she had seen Cullom fourteen times. The physical therapy prescribed by Cullom gave her no relief from the pain, and the injections in her knees afforded her only short-term relief. The knee and hip pain has gotten "a lot worse" since January 2021, when Winford filed for disability. (Tr. 63).

Winford testified she was seen at St. Bernard's Neurosurgery in May 2022 for back and leg pain. She stated that her sharp stabbing pain which she reported at this visit is "a pretty common occurrence." (Tr. 60). She stated there was nothing she could do to ease this pain. According to Winford she was not a candidate for surgery, although she was referred for pain management. The pain management consisted of injections, which Winford said produced no significant relief.

Winford was also referred to an orthopedist, who provided knee and hip injections without significant relief. Winford also indicated she was discussing total knee replacements with the orthopedist.

9

Dr. Rebecca Gladman ("Gladman"), a vocational expert, described Winford's past relevant work as an accounting clerk and a retail store manager. The ALJ asked Gladman to assume a worker of Winford's age, education, and experience, who could perform sedentary work which did not require the following: climbing of ladders, ropes, or scaffolds; more than occasional climbing on ramps or stairs; more than occasional balancing, stooping, kneeling, crouching, or crawling; operation of lower extremity foot control; exposure to fumes, odors, or gases; and exposure to unprotected heights. Gladman testified that such a worker could perform Winford's past job of accounting clerk. In addition, Gladman stated this hypothetical worker could perform other jobs, including the jobs of payroll clerk, cost clerk, and returns item clerk. Gladman further identified other unskilled sedentary occupations which the hypothetical worker could perform: toll collector, surveillance systems monitor, and call-out operator. The ALJ altered the hypothetical question, added the restriction that the worker would be able to sit, stand, or walk no more than six hours in a work day. Gladman testified such a worker could not perform sedentary work. If the variable of three absences a month were added, Gladman stated there would be no jobs available for this worker. (Tr. 65-69).

*The ALJ's Second Decision: The* ALJ's July 15, 2024, decision

10

acknowledged the Appeals Council's remand instructions. The ALJ found Winford to have the same severe impairments as in his earlier decision, with one exception: lumbago was no longer listed as a severe impairment, but degenerative disc disease was added to the list. As in the earlier decision, the ALJ determined Winford did not meet any Listing. The RFC assessment was similar to the previous determination – the ALJ found Winford could perform sedentary work except that she could never climb ladders, ropes, or scaffolds; could no more than occasionally balance, stoop, kneel, crouch, or crawl; never operate foot controls with the bilateral lower extremities; must avoid concentrated exposure to fumes, odors, dusts, gases, and other pulmonary irritants; and could have no exposure to unprotected heights. In his initial decision, the ALJ determined Winford could perform her past relevant work as an accounting clerk. In his second decision the ALJ found her unable to perform any past relevant work.[1] Relying on the testimony of Gladman, the ALJ found Winford able to perform other jobs, citing toll collector, surveillance system monitor, call-out operator, payroll clerk, cost clerk, and retail item clerk. As a result, the ALJ found Winford was not disabled.

---

[1] Gladman testified that the hypothetical worker described in the first question posed to her *could* perform Winford's past relevant work as an accounting clerk. The ALJ misstated this testimony – "The vocational expert testified . . . [the worker] would be *unable* to perform the claimant's past work." (Tr. 25). This misstatement, however, has no effect on this recommendation since the ALJ's ruling was that Winford could perform *other* jobs, not her past work.

11

(Tr. 17-26).

Winford appealed the ALJ's decision to the Appeals Council, which denied her request on April 18, 2025. (Tr. 8-13). Winford asked the Appeals Council to reopen its decision on grounds that the denial did not consider her brief which cited medical evidence regarding her pain complaints. (Tr. 517). Winford's counsel also submitted a medical opinion letter from Cullom to the Appeals Council. (Tr. 518-535, 39-40). On May 30, 2025, the Appeals Council denied Winford's request to change the ALJ's decision. (Tr. 1-7). The Appeals Council found that Cullom's opinion "does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2).

***Claim One – the ALJ failed to consider medical evidence the Appeals Council stated was material.***

Winford contends the ALJ's second decision ignored the Appeals Council's instructions to consider a May 9, 2022, report from St. Bernard Neurosurgery and a March 24, 2022, report of a lumbar spine MRI. There is no merit to this claim.

The report from St. Bernard Neurosurgery was 37 pages, and the results of the lumber spine MRI were contained as part of that record. (Tr. 594-630, MRI results at Tr. 606-607). The ALJ's decision cited to eleven pages from the St. Bernard Neurosurgery records, noting these evaluations documented broad

12

orthopedic dysfunction, that the imaging showed mild degenerative changes, that Winford walked with normal gait and station, received benefits from treatment, and continued to present in no acute distress. (Tr. 23). Winford testified to these findings at both administrative hearings. Winford, of course, disagrees with the ALJ's assessment of the medical records, including the St. Bernard Neurosurgery entries. But disagreement with the records' interpretation is not the same as the ALJ failing to consider the records.

**Claim Two – the ALJ erred in finding, without substantial evidence, that her symptoms and debilitating pain were not supported by the medical evidence.**

After summarizing Winford's testimony, the ALJ found her impairments could reasonably be expected to cause her alleged symptoms. The ALJ further determined that Winford's statements concerning "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 22).

Winford contends the ALJ erred in assessing her statements regarding her symptoms and pain. Substantial evidence supports the ALJ's assessment of her statements and the RFC determination which ensued. Winford's statements of continuous disabling pain were not entirely consistent with the objective medical

13

evidence.  For example, Hashmi, in 2021, found Winford experienced pain with flexion of the lumbar spine and had decreased range of motion and tenderness in both knees.  But these findings were tempered by Winford's report to Hashmi that she could walk 3 to 4 blocks before experiencing leg pain, the finding of normal muscle strength, normal posture and gait, and her ability to stand and walk without an assistive device.  Also, at Winford's initial visit to St. Bernard's Neurosurgery in May 2022, her gait was normal and she was capable of performing activities of daily living but with difficulty due to pain.  (Tr. 616).

Winford contends the ALJ can discount her allegations if there is evidence of malingering or exaggerating her symptoms for financial gain.  *See O'Donnell v. Barnhart*, 318 F.3d 811 (8th Cir. 2003).  This statement is too limiting – the ALJ is tasked with evaluating a claimant's subjective statements and is guided by SSR 16-3p.  Here, the ALJ complied with the relevant regulation and considered the pertinent factors.  There was no error in the ALJ's consideration of Winford's testimony.  The RFC determination accounted for Winford's impairments.  While Winford's subjective statements, if totally accepted, run counter to the ALJ's decision, this does not compel reversal of the ALJ's ruling:

> In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health & Human Serv.,* 879 F.2d 441, 444 (8th Cir.1989) (citing *Steadman v. S.E.C.,* 450 U.S. 91, 99,

101 S. Ct. 999, 1006, 67 L.Ed.2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin,* 349 F.3d at 555 (citing *Bates v. Chater,* 54 F.3d 529, 532 (8th Cir.1995)), or "review the factual record *de novo.*" *Roe v. Chater,* 92 F.3d 672, 675 (8th Cir.1996) (citing *Naber v. Shalala,* 22 F.3d 186, 188 (8th Cir.1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting *Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992), and citing *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989)); *accord Baldwin,* 349 F.3d at 555; *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala,* 30 F.3d 934, 939 (8th Cir.1994) (citing *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir.1992)); *accord Krogmeier,* 294 F.3d at 1022 (citing *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Goff,* 421 F.3d at 789 ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *accord Page,* 484 F.3d at 1042–43 (citing *Kelley v. Barnhart,* 372 F.3d 958, 961 (8th Cir.2004); *Travis v. Astrue,* 477 F.3d 1037, 1040 (8th Cir.2007); *Cox v. Barnhart,* 471 F.3d 902, 906 (8th Cir.2006)).

*Rittenhouse v. Astrue,* 767 F. Supp. 2d 985, 1000–01 (N.D. Iowa 2011).

***Claim Three -- the Appeals Council's decision not to consider the opinion of Cullom was an abuse of discretion****.*

20 C.F.R. § 404.970(a)(5) provides that the Appeals Council will review a case at a party's request if "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision." After the July 15, 2024 decision, Winford requested review by the

15

Appeals Council and submitted Cullom's opinion as additional evidence. (Tr. 39-40). On May 30, 2025, the Appeals Council denied the request for review, finding Cullom's opinion "does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2).[2]

The Appeals Council did not err in its consideration of Cullom's opinion. Cullom's opinion is dated November 12, 2024, four months after the ALJ's decision, and is a summary of Winford's office visits from March 2021 through September 2023 and her complaints of knee pain from October 2016 through April 2024. Winford concedes that these records were introduced at the June 2024 administrative hearing. Accordingly, the "new evidence" is Cullom's post-decision opinion regarding Winford's back, hip, and knee pain. This is not "new evidence" within the meaning of the regulations. To be "new," the evidence must be more than cumulative of other evidence in the record. *Perks v. Astrue,* 687 F.3d 1086, 1093 (8th Cir. 2012). In *Perks,* the claimant submitted an MRI report after the ALJ's decision. While the MRI report was not in the record prior to the ALJ's decision, the opinions of doctors who had reviewed the report were part of the record. The Court found the MRI report was cumulative of evidence already in the record and therefore not "new." Here, Cullom's treatment records were admitted

---

[2] The Appeals Council's denial states "we did not exhibit this evidence." (Tr. 2). Nevertheless, Cullom's opinion is in the record. (Tr. 39-40).

and considered by the ALJ – his post-decision summary of these records and his subsequent opinion are not new evidence, and the Appeals Council's denial of Winford's request for review was not an abuse of discretion.

In summary, the ultimate decision of the Commissioner was supported by substantial evidence.  The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion.  The test is whether substantial evidence supports the ALJ's decision.  *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).  This test is satisfied in this case.

It is recommended that the final decision of the Commissioner be affirmed and Winford's complaint be dismissed with prejudice.

IT IS SO ORDERED this 21st day of July, 2026.

_____
UNITED STATES MAGISTRATE JUDGE